UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

      Patricia M. Conner,                         Case No. 12-41004-MBM
                                             Chapter 7
_____ Debtor.   /                Hon. Marci B. McIvor

Patricia M. Conner,

           Plaintiff,

vs.                                       Adv. Pro. No. 13-5355

U.S. Department of Education and
Educational Credit Management
Corporation,

_____ Defendants.   /

**OPINION DENYING PLAINTIFF'S REQUEST
FOR A HARDSHIP DISCHARGE PURSUANT TO 11 U.S.C. § 523(a)(8)
AND DISMISSING PLAINTIFF'S COMPLAINT**

       Plaintiff, Patricia M. Conner, filed a voluntary petition under Chapter 13 of the

Bankruptcy Code on January 17, 2012.  On November 19, 2013, Plaintiff filed an

adversary proceeding against multiple defendants, including the United States

Department of Education and Educational Credit Management Corporation.  The relief

sought by Plaintiff's complaint is a discharge of her student loan debt pursuant to 11

U.S.C. § 523(a)(8).  On November 17, 2014, this Court held a trial on Plaintiff's

Complaint.  At the conclusion of the trial, the Court requested post-trial briefs.  Based on

the testimony at trial and the evidence in the record, this Court finds that Plaintiff is not

entitled to a discharge of her student loan debt and dismisses Plaintiff's Complaint.

I.

FACTUAL BACKGROUND

Plaintiff, Patricia M. Conner, is a full-time employee of the Detroit Public School system.  She is sixty-one years old and the single parent of an adopted teenage daughter.  Commencing in 1992, Plaintiff obtained loans from various lenders for the purpose of attending Wayne State University.  Between 1992 and 2006, Plaintiff obtained 13 loans from the Michigan Higher Education Assistance Authority (MHEAA) and other lenders.  The loans were subsequently transferred to Home Banc. The original guarantor on these loans was the Michigan Guaranty Authority (MGA), an arm of the MHEAA.  As of October 22, 2014, the balance owed on the loans guaranteed by MGA was $101,193.71.  (Defendants' Exhibit A).[1]  When Plaintiff filed for bankruptcy, these loans were transferred from Home Banc to Educational Credit Management Corporation ("ECMC") pursuant to the Federal Family Education Loan Program ("FFELP").  ECMC is a not for profit corporation organized under the laws of Minnesota. ECMC was created under the direction of the U.S. Department of Education and provides specialized services to the  Department of Education, including defending student loan discharge proceedings.[2]  ( Defendant ECMC's Pre-Trial Brief, Docket No. 172, p.3).

---

[1] All exhibits referred to in this Opinion are the exhibits admitted into evidence at trial.

[2] The United States Department of Education is the final guarantor of loans guaranteed by MGA. In the event of a discharge of student loans guaranteed by MGA, the Department of Education, rather than MGA, is required to reimburse the lender for the amount of the discharged debt.

2

Between November 1, 1996 and August 29, 2003, Plaintiff obtained thirteen

additional student loans.  These loans were direct student loans obtained from the

United States Department of Education.  The principal amount disbursed was $86,482.

(Defendants' Exhibit YY, paragraph 7). Plaintiff never made a voluntary payment on

these debts and made involuntary payments totaling $2,526.28. (Affidavit of Michael

Illes, Senior Loan Analyst for the Department of Education, Defendants' Exhibit YY).

As of October 29, 2013, the unpaid principal and "capped" interest owed by Plaintiff on

her direct student loans was $113,553.19.  (Defendants' Exhibit BBB).[3]

Over the years, Plaintiff obtained multiple deferments to delay collection of her

student loan obligations.  With regard to the loans guaranteed by MGA, the deferments

and forbearance agreements ended in 2008.  In May 2009, the Michigan Guaranty

Agency commenced garnishment of Plaintiff's wages from the Detroit Public Schools.

In order to rehabilitate her loans and avoid garnishment, Plaintiff made nine monthly

payments, commencing on November 15, 2010 and ending on July 11, 2011.

Immediately after making the ninth payment as required by the relevant federal

---

[3]Defendant Department of Education asserts in its answer to Plaintiff's
interrogatories that Plaintiff owes $126,413.58 as of May 9, 2014 on her direct student
loans. While this figure may be accurate, it is not clear how Defendant Department of
Education arrived at this balance. The evidence does not clearly explain the calculation
of interest between October 29, 2013 and May 9, 2014.  For this reason, there may be a
fact question as to the exact amount of interest owed.  However, a determination of the
exact amount of interest owed to date is not necessary for a determination of whether
Plaintiff is entitled to a discharge, nor is it relevant to a determination of an amount
Plaintiff could pay based solely on her income. The exact amount of interest owed is
only relevant to the total amount of Plaintiff's student loan debt. The Court notes that
even if Plaintiff owes the amount of interest reflected on Exhibit BBB (which would be
the lowest of any amount owed), Plaintiff's debt to both Defendants exceeds
$214,746.50, an amount she will never realistically be able to pay.

3

regulation (34 C.F.R. § 682.405), Plaintiff requested and received an additional forbearance of collection of her student loan from September 2011 to August 14, 2014. (Defendants' Exhibit G).

With regard to the direct student loans owed to the United States Department of Education, the only payments made by Plaintiff were involuntary administrative garnishments in 2011 and 2012. The total amount of these involuntary payments was $2,526.28. (Affidavit of Michael Illes, Senior Loan Analyst for the Department of Education, Defendants' Exhibit YY).

On January 17, 2012, Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On May 9, 2012, Plaintiff converted her Chapter 13 case to a Chapter 7 case. On August 15, 2012, Plaintiff obtained a discharge. (Docket No. 67). On August 20, 2012, Plaintiff's Chapter 7 case was closed. On October 30, 2013, this Court entered an order granting Plaintiff's Motion to Reopen her Chapter 7 case. The purpose of reopening the case was to allow Plaintiff to file an adversary proceeding seeking discharge of her student loan debt. On November 19, 2013, Plaintiff filed an adversary proceeding against the United States Department of Education, the Michigan Guaranty Agency, Wayne State University, Nelnet, ACS, DCS Diversified Collection Services, Inc., and Performant Recovery, Inc. Plaintiff is representing herself in this adversary proceeding.

On February 2, 2014, this Court entered an Order Dismissing Plaintiff's Complaint as to Diversified Collection Services and Nelnet because those parties were not properly served. At a hearing on February 4, 2014, the Court held that loans originally serviced or held by Home Banc, the Michigan Guaranty Agency, and ACS,

4

had been transferred to ECMC upon the filing of Plaintiff's bankruptcy case. The Court denied Plaintiff's Motion for Entry of Default Judgment as to those parties and allowed ECMC to substitute into the case as a Defendant.

On June 5, 2014, this Court entered an Order requiring the Plaintiff to complete and submit to Defendants: (1) Income-Based/Pay As You Earn/Income-Contingent Repayment Plan Request (hereinafter "Application for Income-Based Payment Plan"); and (2) Employment Certification for Public Service Loan Forgiveness (hereinafter "Application for Public Service Loan Forgiveness"). Income based repayment plans were created by federal legislation to provide student loan debtors with a realistic monthly payment schedule so as to avoid causing debtors undue financial hardship. The statute requires the Department of Education to calculate the debtor's monthly payment based on the student loan debtor's income and family size.[4] The monthly payment equals 15% of the student loan debtor's income above the certain poverty guidelines set by the federal government and any remaining loan balance is forgiven if the loans are not repaid in full at the end of ten years after payments commence. *See*, 34 C.F.R. § 685.221. As a prerequisite for the Department of Education to consider a student loan debtor's Application for Income-Based Repayment Plan, the student loan debtor must agree to consolidate his/her loans by completing a Federal Direct Consolidation Loan Application and Promissory Note (hereinafter "Federal Loan Consolidation Application")(Defendants' Exhibit III). The consolidation allows student loan debtors to consolidate all student loan debt, including loans obtained directly from

---

[4]The amount of the student loan debt, itself, is not considered.

the Department of Education and loans obtained from other lenders. Since the purpose of the income based repayment plan is to provide student loan debtors with a single affordable monthly payment, student loan debtors would receive little benefit from an income based repayment plan if all student loans are not consolidated.

In July and early August 2014, Plaintiff completed an Income-Based Repayment Plan Application, an Application for Public Service Loan Forgiveness, and an a Federal Loan Consolidation Application and submitted all three applications to counsel for Defendants. (Defendants' Exhibit III, KKK and LLL). On August 15, 2014, Plaintiff sent a letter to FedLoan Servicing, the entity processing Plaintiff's applications and advised FedLoan Servicing that she was cancelling her Federal Loan Consolidation Application. (Defendant's Exhibit MMM). As a result of Plaintiff's withdrawal of her Federal Loan Consolidation Application, the Department of Education was unable to process her Income-Based Repayment Plan Application and her Application for Public Service Loan Forgiveness. (Declaration of Michael Illes, Defendants' Exhibit YY, ¶ 16). If Plaintiff had allowed the Federal Loan Consolidation Application to be processed, her monthly payments under an Income-Based Repayment Plan were estimated to be approximately $268.00 per month. (Declaration of Michael Illes, Defendants' Exhibit YY, ¶ 17).

On November 17, 2014, this Court held a trial on Plaintiff's Complaint seeking discharge of her student loan debt. Prior to commencement of the trial, the Court held a final pre-trial conference in chambers. The purpose of the in-chambers conference was two fold: (1) given the parties mistrust of each other, the Court hoped that an in-chambers conference might facilitate a settlement; and (2) if settlement was not

6

possible, the Court hoped to narrow the issues for trial.  The parties could not reach a

settlement and trial commenced at approximately 11:00 a.m.  Plaintiff called three

witnesses: Dr. Eric Ayers, Kathleen Frederiksen, and herself.  Plaintiff also submitted

exhibits, labeled Exhibits 1 through 12.  All of Plaintiff's exhibits were admitted into

evidence.  The Defendants presented no witnesses.  However, Defendant ECMC

introduced exhibits labeled as Exhibits A through K, and all of those exhibits, except for

Exhibit B, were admitted into evidence.  Defendant United States Department of

Education introduced exhibits labeled as Exhibits AA - OOO.  All Defendant Department

of Education's exhibits were admitted into evidence except for Exhibits JJ, KK , LL, PP,

RR, SS, TT, and UU.  In addition, three exhibits, which contained the notes taken by the

Court during its in-chambers final pretrial conference, were admitted into evidence as

Joint Exhibits 1 - 3.

    Based on evidence introduced at trial, Plaintiff's income is generated from both

her wages and a subsidy she receives for having adopted a daughter. Plaintiff has been

employed by the Detroit Public Schools for sixteen  years. (Docket No. 73, Plaintiff's

Answers to Interrogatories, No. 4A.).  Plaintiff's income from her employment for the

past several years has been relatively consistent.  Plaintiff's income for years 2009

through 2013 is as follows:

| Year | Wage Income | Adjusted Gross Income |
|------|-------------|----------------------|
| 2009 | $50,317 | $47,609 |
| 2010 | $45,358 | $42,671 |
| 2011 | $52,188 | $49,438 |
| 2012 | $41,539 | $41,289 |
| 2013 | $45,255 | $45,005 |

(See Defendants' Exhibits AA - EE).  Plaintiff has not yet filed her 2014 income tax

return, but her gross income for 2014 was $50,568.00. (Plaintiff's Exhibit 3).

In addition to her income from wages, Plaintiff receives a monthly adoption subsidy in the amount of $890.09. This adoption subsidy will be paid to Plaintiff for an additional two and one-half years, and will terminate when her daughter reaches age 18. The adoption subsidy is not included in Debtor's adjusted gross income. (See Defendants' Exhibits AA - EE, and Joint Exhibit 1).

In 2014, Plaintiff's monthly take home income, between her wages and her adoption subsidy was $5,104. Debtor took the following deductions from her wages:

| Wage Deduction | Amount |
|---|---|
| payroll taxes | $849.00 |
| health insurance premium | $247.00 |
| deduction for a health care spending account | $192.00 |
| supplemental life insurance | $ 21.00 |
| disability insurance | $ 15.00 |
| universal life | $ 26.00 |
| group accident | $ 39.00 |
| group critical illness insurance | $ 44.00 |
| pre-paid legal services | $ 15.00 |
| "life lock" | $ 14.00 |
| legal expense | $ 10.00 |
| mandatory union dues | $ 81.00 |
| mandatory teacher certification license | $ 5.00 |
| Total | $1,558.00 |

Debtor's monthly expenses in 2014, were as follows:

| Expense | Amount |
|---|---|
| rent | $1,042.00 |
| mandatory rental insurance | $ 38.00 |
| electricity | $ 52.00 |
| gas | $ 51.00 |
| telephone and internet | $ 274.00 |
| automobile insurance | $ 305.00 |
| vehicle repairs | $ 231.00 |
| gas | $ 315.00 |
| food | $ 537.00 |
| house expenses | $ 66.00 |
| uninsured medical expenses and coinsurance | $ 112.00 |
| non-compensated teacher expenses | $ 21.00 |
| personal care products and services | $ 55.00 |
| additional educational costs for daughter | $ 10.00 |
| religious donations | $ 20.00 |
| Total | $3,129.00 |

(Plaintiff's Exhibit 3; Joint Exhibits 1 and 2).[5]

At the conclusion of the trial, the Court requested post-trial briefs. Plaintiff's post-trial brief and supplemental pleadings are docketed at Docket No. 181 and 187. Defendant ECMC's post-trial brief is docketed at Docket No. 188. Defendant United States Department of Education's post-trial brief is docketed at Docket No. 189.

.

---

[5]The income, withholding, and expenses listed above are taken directly from Plaintiff's Exhibit 3. To the extent that the numbers set forth above differ from the numbers on Plaintiff's Exhibit 3, it is because, where monthly payments vary month to month, the Court annualized the total payments by adding them up and divided that number by 12. The Court then rounded those numbers to the nearest dollar.

II.

ANALYSIS

Plaintiff seeks to discharge her student loan debt pursuant to 11 U.S.C.

§523(a)(8).  11 U.S.C. § 523(a)(8) provides that student loan debts are non-

dischargeable absent a showing of undue hardship by the debtor.  Specifically the

statute provides:

> (a)      A discharge under section 727 . . . of this title
> does not discharge an individual from any debt -
>
> (8)      for an educational . . . loan made, insured or
> guaranteed by a governmental unit . . . unless excepting
> such debt from discharge under this paragraph will impose
> an undue hardship on the debtor and the debtor's
> dependents . . .

11 U.S.C. § 523(a)(8).

While the Bankruptcy Code does not define "undue hardship," case law from this

district has made it clear that difficulty in repaying a student loan does not in and of itself

constitute undue hardship.  In *In re Healey,* 161 B.R. 389, 393 (E.D. Mich. 1993), the

court stated:

> It is beyond peradventure that requiring repayment of the
> student loans in the instant case (and for that matter, in
> almost any case), imposes a "hardship" on the debtor.  It is
> more difficult and expensive to honor an obligation than to
> disregard it, and reimbursement often means that financial
> resources will either be tight or not available at all for other
> discretionary activities.  However, the fact that a debtor's
> budget may be tight for the foreseeable future is the norm
> rather than the exception.  The question for this court to
> consider is thus not whether payment of the loans constitute
> a hardship (it certainly does), but instead whether that
> hardship is *undue.*  The phrase "undue hardship" is not
> defined by the Bankruptcy Code, however the existence of
> the modifier "undue" indicates that Congress deemed

> "garden-variety" hardship or "unpleasantness" as an
> insufficient excuse for a discharge of student loans.  Indeed,
> as one would expect by using common sense, there is a
> strong legislative policy against allowing the discharge of
> student loans in bankruptcy.

*In re Healey,* 161 B.R. 389, 392-393 (E.D. Mich. 1993)(citations omitted).

The Sixth Circuit has also provided significant guidance as to how to evaluate

undue hardship for purposes of 11 U.S.C. § 523(a)(8).  *See, Tirch v. Pennsylvania*

*Higher Educ. Assistance Agency (In re Tirch),* 409 F.3d 677 (6th Cir. 2005); *Oyler v.*

*Education Credit Management Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005); and

*Miller v. Penn. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616 (6th Cir.

2004).

In *Tirch,* the Sixth Circuit adopted the three part test set forth in *Brunner v. New*

*York State Higher Educ. Service Corp.*, 831 F.2d 395 (2d Cir. 1987) as the test to be

used in analyzing whether a plaintiff has established undue hardship.  That test requires

that, in order for a student loan debt to be discharged, a student loan debtor must show:

> (1) that the debtor cannot maintain, based on current income and
> expenses, a "minimal" standard of living for herself and her dependents if
> forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely
> to persist for a significant portion of the repayment period of the student loans;
> and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Tirch,* 409 F.3d at 680; *Brunner*, 831 F.2d at 396.

Plaintiff bears the burden of affirmatively proving all three prongs of the *Brunner*

test.  If a debtor fails to satisfy any one of these requirements, the bankruptcy court's

inquiry must end there, with a finding of no dischargeability.  *Cheesman v. Tennessee*

11

*Student Assist. Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir. 1994); *Healey,* 161 B.R. at 393; *In re Connor,* 83 B.R. 440, 445 (E.D. Mich. 1988). There is no language within § 523(a)(8) that permits a discharge, partial or otherwise, absent a finding of "undue hardship." *In re Miller,* 377 F.3d 616, 622 (6th Cir. 2004)("In sum, we stress that the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy-regardless of whether a court is discharging a debtor's student loans in full or only partially.")

**A.  Debtor Could Maintain a Minimal Standard of Living for Herself and Her Dependent If Required to Repay Her Student Loans.**

The first prong of the *Brunner* test requires this Court to determine whether Plaintiff has sufficient income, after the payment of expenses, to maintain a minimal standard of living for herself and her dependent. Given the size of Plaintiff's student loan debt (at least $213,000), and her age (61), it might seem obvious that requiring Plaintiff to pay this debt in full would cause Plaintiff and her daughter "undue hardship". However, Plaintiff's total debt is not the correct measure of debt for purposes of determining "undue hardship". With income based repayment plans, student loan debtors are only required to pay what their income allows for ten years. If all payments are made, the balance of the loan is written off. Therefore, the relevant inquiry for purposes of evaluating "undue hardship" is whether Plaintiff could make the monthly payment as required by an income-based repayment plan.

Based on Plaintiff's own figures, her monthly income in 2014 was $5,104 (wages of $4,214 plus an adoption subsidy of $890). Allowing Plaintiff payroll deductions for

payroll taxes ($849), health insurance premium ($247), health care spending account, ($192), supplemental employee life ($21), disability insurance ($15), group universal life ($26), group accident insurance ($39), group critical illness insurance ($44), pre-paid legal services ($15), life lock ($14), legal expense ($10), mandatory union dues ($81), and mandatory teacher certification fee ($5), Plaintiff had total monthly payroll deductions in 2014 of $1,558,[6] which left Plaintiff with monthly income in the amount of $3,546.00. Expenses which could either be documented by Plaintiff or were credibly testified to by Plaintiff are as follows: lease ($1,042), mandatory rental insurance ($38), electricity ($52), gas ($51), telephone and internet ($274), automobile insurance ($305), vehicle repairs ($231), gas ($315), food ($537), house expenses ($66), out of pocket medical expenses ($112), additional expenses related to Plaintiff's employment as a teacher ($21), personal care products and services ($55), educational costs for dependent ($10) and religious donation ($20). These expenses total $3,129. (Plaintiff's Exhibit 3). The *only* expense on Plaintiff's Exhibit 3 which the Court did not include was an "Apparel and Services" expense of $162, which was unsupported by documentation. The court notes that while it allowed many of Plaintiff's wage deductions as reasonable, many of the payroll deductions are not mandatory, and could easily be eliminated to increase Plaintiff's disposable income should she want to increase the amount she spends on apparel or other discretionary items.

Based on Plaintiff's undisputed income and reasonable expenses, the Court

---

[6]Defendants argued at trial that many of these payroll deductions are not mandatory and could be eliminated to increase Plaintiff's income. With the exception of the "life lock" expense, which was not fully explained, the Court found Plaintiff's testimony as to why she carries the various insurance policies credible.

finds that Plaintiff has $417.42 available to make payments on her student loan debt. Given that the Department of Education would have fixed Plaintiff's monthly payment at approximately $267 if Plaintiff had completed the Income-Based Repayment Plan process, the Court finds that Plaintiff could make an appropriate payment on her student loans and maintain a minimal standard of living for herself and her daughter.

Plaintiff's response is that her expenses consistently exceed her income and, therefore, she cannot make a payment on her student loan debt. Plaintiff has filed many pages of receipts and bills to support her argument that she has insufficient income to repay her student loans. While Plaintiff's documents could possibly demonstrate that Plaintiff's expenses exceed her income each month, that fact does not satisfy the first prong of the *Brunner* test. Plaintiff must demonstrate that she cannot maintain a minimal standard of living if required to make a student loan payment. In the context of a student loan discharge case, the expenses set forth above allow Plaintiff to maintain a minimal standard of living. In fact, many courts have held that cell phones, cable, internet and recreational expenses are not part of a minimal standard of living. *In re Heart,* 438 B.R. 406, 410 (E.D. Mich. 2010); *Miller,* 377 F.3d at 623–24. Plaintiff's monthly bank statements from November 2012 through March 2014 reveal multiple monthly withdrawals for restaurant meals and non-essential store purchases. (Defendants' Exhibit MM). While Plaintiff is not living an extravagant lifestyle, there is still the ability to minimize her expenses to make a payment on her student loan debt.

Plaintiff's most compelling argument is that her medical expenses are significantly higher than those represented on Plaintiff's Exhibit 3, and that those expenses are so high that they completely eliminate Plaintiff's ability to make a payment

14

on her student loan debt.  The Court finds this argument unpersuasive.  Plaintiff has medical insurance which covers her and her dependant daughter. To the extent that insurance does not cover Plaintiff's daughter, her daughter's medical expenses are fully covered by Medicaid. (Transcript, p. 48).  In considering Plaintiff's out of pocket medical expenses,  Plaintiff has $192.00 available from her health care spending account and $112.25 earmarked for out-of-pocket medical expenses, which the court included as a reasonable expense in its calculation of expenses set forth above.   Thus, Plaintiff has $304.25 per month available to pay out-of-pocket medical expenses.  Plaintiff has failed to provide any evidence that her medical expenses are so extraordinary that medical insurance, plus $304.25 per month, is not a reasonable allocation for medical bills.  In sum, Plaintiff cannot demonstrate that her expenses generally could not be minimized to make a monthly payment of $267 on her student loan debt.  Therefore, Plaintiff fails the first prong of the *Brunner* test.


**B.      Plaintiff Cannot Demonstrate That Her Financial Situation Is So Hopeless That She Is Unable to Make Payments on Her Student Loans.**

The second prong of the *Brunner* test requires that student loan debtors demonstrate that an inability to make payments on their student loan debt is likely to persist for a substantial portion of the repayment period.  The dischargeability of student loans should be based upon the "certainty of hopelessness, not merely a present inability to fulfill financial commitment."  *Oyler,* 397 F.3d at 386 citing In re Roberson, 999 F.2d 1132, 1136 (7th Cir.1993).  To satisfy the second prong of the *Brunner* test, "the debtor must precisely identify her problems and explain how her condition would

impair her ability to work in the future." *Tirch,* 409 F.3d at 681.

As discussed above, Plaintiff is fully employed as a teacher for the Detroit Public School system. She has regular monthly income, and that income is sufficient to make a payment on her student loan debt and maintain a minimal standard of living for herself and her dependent. Plaintiff, however, argues that she is eligible for retirement in March 2015 and that, once she retires, her income will be reduced so greatly that she will be unable to make a payment on her student loan debt. Plaintiff also argues that the monthly adoption subsidy will end in two and one-half years, reducing her income even further.

The Court finds that the fact that Plaintiff's income may decrease in March of 2015 is insufficient to demonstrate a certainty of hopelessness. Plaintiff is able to work and is capable of continuing to work in the future. If her income decreases in 2015, it is because Plaintiff chooses to retire early, not because she has been forced out of employment. Many courts that have addressed age within an undue hardship context have denied discharge on facts similar to the facts of the instant case. *See, Jones v. Bank One Texas (In re Jones)* , 376 B.R. 130, 139 (W.D. Tex. 2007)("debtor cannot now use her age as grounds to avoid repaying her student loans as she chose to go to school later in life, which resulted in the student loan debts persisting into her later age."); *Fabrizio v. United States Dep't of Educ. (In re Fabrizio),* 369 B.R. 238, 249 (Bankr. W.D. Pa. 2007)("Nor can the debtor rely on his age of 51 years as a discharge basis. The simple fact that the debtor will have to pay his educational loans later into life is merely a consequence of his decision to incur debt for educational purposes during his thirties.")*; Chapelle v. Educational Credit Mgmt. Corp. (In re Chapelle)*, 328

16

B.R. 565, 572 (Bankr. C.D. Cal. 2005) (". . . age does not constitute an additional circumstance,' especially when [the debtor ] is healthy and does not suffer from any age-related illnesses that affect her ability to work."); *Educational Credit Mgmt. Corp. v. DeGroot (In re DeGroot)*, 339 B.R. 201, 212 (D. Or. 2006) ("where debtors choose to incur educational debt later in life, the fact that they will reach retirement age during the loan repayment period is not enough alone to justify discharge"); *Educational Credit Mgmt. Corp. v. Waterhouse (In re Waterhouse),* 333 B.R. 103, 112 (W.D.N.C. 2005) (rather than presenting evidence of "additional circumstances," the debtor relied on his 51-year-old age to try to satisfy *Brunner's* second prong; the court found that the advanced age argument does not satisfy the second prong of *Brunner*.); *In re Robinson,* 390 B.R. 727 (Bankr. W.D. Okla. 2008); *DeRose v. EFG Tech., et al (In re DeRose),* 316 B.R. 606, 609 (Bankr. W.D.N.Y. 2004).

In addition, when a student loan debtor is alleging a certainty of hopelessness based on the debtor's medical condition, the second prong of the *Brunner* test requires that "the debtor must precisely identify her problems and explain how her condition would impair her ability to work in the future." *Tirch,* 409 F.3d at 681. In cases where plaintiffs have succeeded in demonstrating medical conditions severe enough to constitute an undue hardship, plaintiff was either disabled or suffering a significant impairment. *See, In re Balaski,* 280 B.R. 395, 399 (Bankr. N.D. Ohio 2002) (undue hardship found because debtor's physical deformity – he lacks wrists, elbows, or fully functioning hands – had worsened to where his shoulders were "destroyed" from overuse, his hip was degrading, and his spine was fusing); *In re Smith,* 45 B.R. 711, 712 (Bankr. W.D.N.Y. 1985) (student loans discharged where debtor was 70 percent

17

disabled, had active duodenal ulcer, a nerve condition, skin rash and acute hypertension); *In re Dockery,* 36 B.R. 41 (Bankr. E.D. Tenn. 1984) (student loans discharged where debtor's leg amputated, hands crushed, and back broken as a result of accident, and debtor suffered three heart attacks); *In re Feenstra*, 51 B.R. 107 (W.D. N.Y. 1985) (undue hardship found where debtor could not pay loans despite continuing to work, and he and his four dependent children were all recovering alcoholics and drug addicts).

Courts have also identified what is *not* an undue hardship. See, *In re Ross,* 262 B.R. 460 (W.D. Wash. 2000) (back problems, depression, knee surgery, and gall bladder surgery did not constitute an undue hardship); *In re Sands,* 166 B.R. 299 (Bankr. W.D. Mich. 1994) (diabetes and hypertension were not an undue hardship); *In re Love,* 33 B.R. 753 (Bankr. E.D. Va. 1983) (arthritis and head injury causing extreme sensitivity to stress were not an undue hardship); *In re Archie,* 7 B.R. 715 (E.D. Va. 1980) (obesity not an undue hardship).

In the instant case, Plaintiff's medical conditions do not prevent her from working. She is currently working and may continue to do so for many more years. Her physician, Dr. Ayers, testified that while Plaintiff has many chronic physical conditions, those conditions are all manageable with the appropriate medication. (See, Dr. Ayers testimony, Transcript, pp. 28, 33). If Plaintiff retires, her income might decrease to a point that Defendants cannot obtain even a minimal repayment of the debt owed to them. Based on the relevant case law however, the fact that Plaintiff's income *may* decline is insufficient to establish that Plaintiff's financial condition is so hopeless that she satisfies the second prong of the *Brunner* test.

18

**C.      Plaintiff Has Not Made a Good Faith Effort to Repay Her Student Loans.**

The third prong of the *Brunner* test requires that Plaintiff demonstrate that she has made a good faith effort to repay her student loans.  Many courts have held that student loan debtors who make little or no effort to repay student loans cannot demonstrate a good effort to repay their debt.  *Fraley v. United States Dep't of Educ. (In re Fraley),* 247 B.R. 417, 421 (Bankr. N.D. Ohio 2000) (court refused to discharge loan of debtor who made no payment, holding that the court "simply cannot conclude that the debtor has made a good faith effort to repay his student loans"); *Goulet v. Educational Credit Mgmt. Corp. (In re Goulet),* 284 F.3d 773, 776 (7th Cir. 2002) (rejecting claim for undue hardship discharge in part because debtor "never made a single payment on his student loans"); *Parks v. Graduate Loan Center (In re Parks)*, 293 B.R. 900, 904 (Bankr. N.D. Ohio 2003) ("the sole $168.23 payment to PHEAA hardly constitutes a good faith effort to repay under the third *Brunner* prong").

Courts have also held that the fact that, for some portion of a loan repayment period, a debtor was able to obtain deferments or forbearance agreements is not sufficient to demonstrate a good faith effort to repay. *Spence v. Educational Credit Mgmt. Corp.,* 541 F.3d 538, 545 (4th Cir. 2008) ("Obtaining the deferment of student loans is not sufficient to demonstrate a good faith effort to repay them when the deferment is followed by not one payment or any effort to work out a reasonable payment schedule"); *Educational Credit Mgmt. Corp. v. Mosko (In re Mosko),* 515 F.3d 319, 327 (4th Cir. 2008) ("without reasonable effort to make subsequent payments, requesting deferments and forbearances alone does not establish good faith").

In the instant case, Plaintiff obtained loans from 1992 to 2006.  With respect to

Defendant ECMC, it is undisputed that Plaintiff owes $101,193.71. ( Defendants' Exhibit A). The only payments ever made to Defendant ECMC were made by way of involuntary garnishment, followed by nine monthly payments necessary to stop the involuntary garnishment and obtain an additional deferment of collection. ( Defendants' Exhibit G).

With respect to Defendant Department of Education, while there may be some disagreement between Plaintiff and Defendant as to the actual amount of interest owed by Plaintiff, it is undisputed that Defendant Department of Education disbursed student loans in the amount of $85,482 between November 1, 1996 and August 29, 2003. It is also undisputed that a significant amount of interest has accrued on the loans owed to the Department of Education. Plaintiff has never made a single voluntary payment on her Department of Education loans. (See Declaration of Michael Illes, Defendants' Exhibit YY, ¶ 11 and Transcript, p. 181.)

This Court finds that Plaintiff's failure to make a single voluntary payment on her student loan obligation, outside of the nine required to obtain a further deferment, does not demonstrate the level of good faith required to obtain a discharge of her student loan debt. Furthermore, the Sixth Circuit has held that a student loan debtor's failure to avail themselves of programs which could assist them in repaying their student loans demonstrates a lack of good faith sufficient to deny discharge. *Tirch,* 409 F.3rd at 683. The *Tirch* court stated "it is difficult, although not necessarily an insurmountable burden for a debtor who is offered, but then declines the government's income contingent repayment program, to come to this Court and seek an equitable adjustment of their student loan debt." *Id.* (citations omitted).

20

Based on the *Tirch* decision, and because this Court believed it was in Plaintiff's best interest, the Court ordered Plaintiff to complete the documents necessary for the Department of Education to provide Plaintiff with an income based repayment plan. (See "Order Denying Plaintiff's Motion for Protective Order and Requiring Plaintiff to Complete and Submit an Income Contingent Repayment Plan Request and Employment Certification for Public Service Loan Forgiveness", Docket No. 89). Plaintiff initially complied with this Court's order but, on August 15, 2014, Plaintiff withdrew her application for loan consolidation.  Since loan consolidation was a necessary prerequisite to obtaining an Income-Based Repayment Plan, the Department of Education was unable to process either Plaintiff's Application for an Income-Based Repayment Plan or her Application for Public Service Loan Forgiveness. ( Declaration of Michael Illes, Defendants' Exhibit YY, ¶¶ 16 and 17).

This Court finds that Plaintiff's failure to make any voluntary payments on her student loan debt (except for the nine payments required to obtain an additional deferment) combined with her steadfast refusal to participate in a process which would have required income based repayments in exchange for potential total forgiveness of debt should Plaintiff's income fall below the poverty guidelines, demonstrates a lack of good faith.  Therefore, Plaintiff cannot satisfy the third prong of the *Brunner* test.


III.

CONCLUSION

To obtain a discharge of a student loan under 11 U.S.C. § 523(a)(8), Plaintiff has the burden of proving all three prongs of the test set forth in *Brunner v. New York State*

*Higher Education Service Corp.*, 831 F.2d 395 (2d Cir. 1987). Based on the exhibits admitted into evidence and testimony at trial, Plaintiff has failed to satisfy any elements of the test. First, considering both Plaintiff's income and expenses, this Court has determined that Plaintiff could maintain a minimal standard of living for herself and her daughter and make an income based repayment on her student loan debt. Second, based on Plaintiff's current state of economic affairs, that being full time employment as a Detroit Public School teacher, this Court finds that Plaintiff has failed to demonstrate that either her financial condition or her medical condition creates such a "certainty of hopelessness" that Plaintiff can prevail on the second prong of the *Brunner* test. Third, Plaintiff's failure to make a single voluntary payment on loans incurred over a fourteen (14) year period, combined with Plaintiff's failure to avail herself of any remedy designed to assist her in minimizing the repayment of her student loan debt, demonstrates a lack of good faith. For all these reasons, this Court DENIES Plaintiff's request that her student loans be discharged under 11 U.S.C. § 523(a)(8). Plaintiff's Complaint is dismissed.

Signed on January 14, 2015

                    /s/ Marci B. McIvor
                    Marci B. McIvor
                    United States Bankruptcy Judge

22